IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.  12-cv-01363-WYD

JOSE ARTURO PENA,

      Applicant,

v.

S. HARTLEY, Warden, Arkansas Valley Corr. Fac., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

      Applicant, Jose Arturo Pena, is a prisoner in the custody of the Colorado

Department of Corrections (DOC) who currently is incarcerated at the Arkansas Valley

Correctional Facility in Crowley, Colorado.  Mr. Pena, acting *pro se*, initiated this action

by submitting to the Court on May 24, 2012, an Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging the validity of his conviction and

sentence in Adams County, Colorado, district court Case No. 93CR1195.  He has been

granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  ECF No. 1 is

an example of the convention I will use throughout this order to identify the docket

number assigned to a specific paper by the Court's electronic case filing and

management system (CM/ECF).

      On June 7, 2012, Magistrate Judge Boyd N. Boland ordered Respondents to file

within twenty-one days a pre-answer response limited to addressing the affirmative

defenses of timeliness under 28 U.S.C. § 2244(d) and/or exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A).  On June 26, 2012, Respondents filed their pre-answer response (ECF No. 15).  Mr. Pena did not file a reply.

On September 4, 2012, I dismissed the case in part (ECF No. 18) by dismissing unexhausted claims 2(c), 4, and 7 as procedurally defaulted and claims 2(a), 2(b), 3, and 5 as not cognizable in a habeas corpus action.  I further ordered Respondents to file an answer within thirty days that addressed the merits of exhausted claims 1, 2(d), and 6.  These claims remain pending.  The state court record was filed on September 14, 2012 (ECF No. 19), and Respondents' answer (ECF No. 20) was filed on October 2. Mr. Pena did not file a reply, although he was given the opportunity to do so.  Instead, on November 7, 2012, he filed a motion to reconsider the dismissal of claims 2(c) and 4.

In considering Mr. Pena's filings, I am mindful that he is proceeding *pro se* and, therefore, I construe his pleadings liberally and hold them to "less stringent standards" than pleadings drafted by lawyers in accordance with *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Such liberal construction is intended merely to overlook technical formatting errors, poor writing style, and other defects in the party's use of legal terminology, citation, and theories.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I cannot act as a *pro se* litigant's legal advocate, and a *pro se* litigant retains the burden to allege sufficient facts to state a viable claim.  Furthermore, *pro se* status does not relieve a party of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, I must apply the same standard to counsel licensed to practice

2

law and to a *pro se* party.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993);

*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  For the reasons stated

below, I will deny the motion to reconsider the dismissal of claims 2(c) and 4, and

dismiss exhausted and pending claims 1, 2(d), and 6.

## I.  Factual and Procedural Background

Mr. Pena was convicted by a jury in Adams County District Court Case No.

93CR1195 on one count of first degree murder (after deliberation), and later was

sentenced to life imprisonment in the DOC.  ECF No. 15 at 1.  Mr. Pena appealed

directly to the Colorado Court of Appeals, which affirmed on October 13, 2005.  ECF

No. 15, ex. N (*People v. Pena*, No. 02CA0413 (Colo. Ct. App. Oct. 13, 2005)

(unpublished)).  On March 23, 2006, the appeals court denied rehearing.  ECF No. 15,

ex. L.  On September 11, 2006, the Colorado Supreme Court denied certiorari review.

ECF No. 15, ex. J.

On August 30, 2007, Mr. Pena filed a postconviction motion pursuant to Rule

35(c) of the Colorado Rules of Criminal Procedure.  ECF No. 15, ex. A at 8.  After a

hearing, the trial court denied the Rule 35(c) motion on January 28, 2009.  *Id.* at 6-7.

Mr. Pena appealed to the Colorado Court of Appeals, which affirmed on September 29,

2011.  ECF No. 15, ex. E (*People v. Pena*, No. 09CA0325 (Colo. Ct. App. Sept. 29,

2011) (unpublished)).  On March 5, 2012, the Colorado Supreme Court denied certiorari

review.  ECF No. 15, ex. C.

On May 24, 2012, Mr. Pena filed his application for writ of habeas corpus with

this court.  On September 4, 2012, I dismissed the application in part.  In the September

4 partial dismissal order, I noted that Respondents conceded the application was timely, dismissed certain claims as procedurally defaulted or not cognizable in a habeas corpus action, and drew the remaining exhausted claims for further proceedings.

## II.  Motion to Reconsider

Before addressing the merits of the exhausted claims, I will address Mr. Pena's motion to reconsider the dismissal of procedurally defaulted claims 2(c) and 4.

In claim 2(c), Mr. Pena asserted that admission of the assault and sexual assault violated his due process right to a fair trial.  In claim 4, Mr. Pena asserts that admission of several pieces of evidence violated his right to due process.  I agreed with Respondents that claims 2(c) and 4 were unexhausted because Mr. Pena relied only on Colorado case law when he presented the claims to the state courts and, therefore, he failed to present these claims to the state courts as asserting a federal constitutional question.  I also found that Mr. Pena had procedurally defaulted both claims, and failed to demonstrate cause and prejudice or a fundamental miscarriage of justice.  Therefore, I found that claims 2(c) and 4 were procedurally barred from federal habeas review, and dismissed the claims.

I have reviewed Mr. Pena's arguments contending that these claims are not unexhausted, as well as the portions of the state court record to which they pertain, and do not find the arguments persuasive.  Mr. Pena fails to convince me that claims 2(c) and 4 were dismissed erroneously as unexhausted and procedurally barred.  In addition, his argument based on *Walker v. Attorney General*, 167 F.3d 1339, 1344-45 (10th Cir. 1999), is inapplicable to the facts of this case.  In the instant action, Mr. Pena

4

does not raise a competency claim.  Secondly, Rule 35(c) of the Colorado Rules of

Criminal Procedure, including the specific statutory sections Mr. Pena cites in his

argument, Colo. R. Crim. P. 35(c)(3)(VI) and (VII), were in effect in 2004, long before he

filed his Rule 35(c) postconviction motion on August 30, 2007.  Therefore, Colo. R. Civ.

P. 35(c) applies to his case.  In any event, it is a long-standing tradition that habeas

corpus applicants may not raise in a subsequent postconviction motion claims

previously raised and resolved on appeal or not raised on appeal or in a prior

postconviction motion.  *See People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996)

(quoting *People v. Bastardo*, 646 P.2d 382, 383 (Colo. 1982)).  The motion to

reconsider will be denied.

### III.  Analysis

### A.  Standard of Review on the Merits

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Pena bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 784. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Although *Richter* concerned a state-court order that did not address any of the defendant's claims, its presumption is applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013).

6

For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96.   Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id.*

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).   The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Pena seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).   Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.   Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.   Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).   If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id.* at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable." *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their

independent judgment would conclude the state court misapplied Supreme Court law."

*Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable
> requires considering the rule's specificity.  The more general
> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations.  [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Richter*, 131 S. Ct. at 786 (citation and internal quotation marks omitted).  In conducting

this analysis, the Court "must determine what arguments or theories supported or . . .

could have supported[] the state court's decision" and then "ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with

the holding in a prior decision of [the Supreme] Court."  *Id.*  In addition, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S. Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.

*Richter*, 131 S. Ct. 786-87.

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Pena bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. Claims

I now will address the merits of Mr. Pena's exhausted and remaining claims:

1. The trial court erred when it failed to suppress Mr. Pena's custodial statement to a detective.

2(d). Admission of the assault and sexual assault violated the Confrontation Clause.

6. Mr. Pena received ineffective assistance of counsel.

**Claim 1**

As his first claim, Mr. Pena alleges that the trial court erred when it failed to suppress his custodial statement to a detective in violation of his Fifth Amendment privilege against self-incrimination.  I disagree.

The Fifth Amendment to the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that law enforcement officers must employ certain procedural safeguards to ensure that a criminal suspect's right against compulsory self-incrimination is protected during an interrogation.  *Id.* at 478-79. The term "interrogation" for purposes of *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  The test focuses on the perspective of the suspect, not the intent of the police.  *Id.*  However, the intent of the police is not irrelevant.  *Id.* at 301, n.7.  Nonetheless, police may engage in "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" without first providing the *Miranda* warnings.  *Miranda*, 384 U.S. at 477-78.  The determination of whether an individual is in custody at the time of questioning is a mixed question of law and fact.  *Manthey v. Darr*, No. 10-cv-01755-WYD, 2011 WL 3471075, at *5 (D.

Colo. Aug. 8, 2011) (unpublished); *Sanchez v. Abbott*, No. 05-cv-00423-EWN-BNB, 2007 WL 4178474, at *8 (D. Colo. Nov. 26, 2007) (unpublished).

Incriminating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne run afoul of the Fifth Amendment and are inadmissible at trial as evidence of guilt. *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). Without more, however, misrepresentations, ruses, and trickery by questioning authorities do not render an otherwise voluntary confession involuntary. *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (interrogator's misrepresentation to suspect that accomplice already had confessed did not render suspect's confessional coerced). In determining whether a defendant's inculpatory statements were voluntary, the Court considers the following factors, under a totality-of-the-circumstances test: (1) the age, intelligence, and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also Mincey v. Arizona*, 437 U.S. 385 (1978). The Court is mindful that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Mr. Pena bases his first claim on the fact that, when the lead investigator first met him in New Mexico, roughly eight years after the murder of the victim, C.Z., the detective made a statement, to which Mr. Pena made an incriminating

reply.  He argues here, as he did in the state courts, that the detective's

statements constituted an interrogation in violation of *Miranda*.

On direct appeal in No. 02CA0413, the Colorado Court of Appeals found

the following facts:

> After defendant was arrested in New Mexico,
> two deputy sheriffs, one being the principal
> investigating officer, were dispatched to bring him
> back to Colorado.  Outside a holding cell in New
> Mexico, the investigating officer approached
> defendant and introduced himself.  As part of the
> ensuing exchange, the investigating officer told
> defendant that he "had been looking for him for a long
> time" and that "eight years is a long time to run."  To
> these statements, defendant replied: "Nine, and it is;
> it's time to get it over with."
>
> The investigating officer then told defendant
> that "once things settled down a bit" and they were
> back in Colorado, he wanted to hear defendant's
> version of what happened.  Defendant replied that he
> had already spoken to his attorney in Colorado and
> that he did not want to make any more statements
> until he had spoken to her further.  Wanting to be
> clear in his understanding of defendant's position, the
> officer then asked defendant again whether he
> wanted to refrain from making any statements until he
> could be in the presence of his attorney, and
> defendant answered this question in the affirmative.

ECF No. 15, ex. N at 4-5.

Before trial, Mr. Pena filed a motion to suppress his statements made to

the principal investigating officer at the time of his arrest.  R. vol. 1, 56-58, May 9,

2001.  In the motion, he argued that the detective's statement, "[e]ight years is a

long time to run," constituted interrogation under the *Miranda* test, such that

13

applicant's response should have been suppressed.  *Id.* at 57.  Following a

motions hearing, R. vol. 4, 9-31, August 3, 2001, the trial court entered its

findings and denied the motion to suppress.  R. vol. 5, 2-5, Aug. 8, 2001.  The

Colorado Court of Appeals affirmed, reasoning that:

> The issue of whether the statement was the product of an interrogation is a mixed question of law and fact.  Our standard of review requires that we give deference to the trial court's findings of historical fact, and our review of the legal question, including any constitutional issues, is de novo.  People v. Matheny, 46 P.3d 453 (Colo. 2002).

> The Fifth Amendment to the United States Constitution protects a criminal suspect's right to have an attorney present during custodial interrogations.  Miranda v. Arizona, supra; People v. Gonzales, 987 P.2d 239 (Colo. 1999).  Once a suspect in custody invokes his right to an attorney, all interrogation in the absence of counsel must cease.  People v. Gonzales, supra.  Under Miranda v. Arizona, supra, statements made by a defendant during a custodial police interrogation are inadmissible as evidence in a criminal case unless it is established that the defendant was adequately advised of his Fifth and Sixth Amendments rights and waived them.  Two requirements must be met before Miranda is applicable:  the person making the statement must be in custody, and the statement must be the product of police interrogation.  People v. Johnson, 30 P.3d 718 (Colo. App. 2000).

> Here, it is undisputed that defendant was in custody at the time of the statement in question and that the officers did not advise him of his rights under Miranda v. Arizona, supra, before speaking with him. The issue then becomes whether the statement resulted from an interrogation.

"Interrogation" for purposes of the Miranda analysis has not been limited to express questioning, but also includes its functional equivalent. People v. Rivas, 13 P.3d 315 (Colo. 2000). That is, it refers not only to express questioning by a police officer, but also to any words or actions on the part of the officer (other than those normally attendant to arrest and custody) that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297 (1980); People v. Trujillo, 784 P.2d 788 (Colo. 1990).

In determining whether a person has been subjected to custodial interrogation, courts must consider the totality of the circumstances surrounding the encounter. People v. Rivas, supra; People v. Gonzales, supra. The determination of whether an officer's words or actions are reasonably likely to elicit an incriminating response from the suspect turns primarily upon the perceptions of the suspect, rather than the intent of the officer. People v. Trujillo, supra. However, the officer's intent is still relevant because it may bear on whether he should have known that his words or actions were reasonably likely to elicit an incriminating response. Rhode Island v. Innis, supra; People v. Johnson, supra.

The trial court found, with support in the record, that there were no misleading statements, compelling influences, or psychological ploys evident in the encounter and the investigating officer's statements could not be characterized as evocative.

At trial, the investigating officer testified that his statements to defendant were merely introductory and conversational and that he did not expect any response from defendant. Indeed, he testified that his intention was to wait until they had returned to Colorado before any questioning began because the setting at the New Mexico jail was not conducive to a proper interrogation.

15

There is no evidence that the officers were aware, or were trying to take advantage, of any particular susceptibility of defendant.  Defendant, in fact, had already spoken to his attorney and had agreed with her not to make any statements to the police until she was present.

Furthermore, while evasion is evidence of consciousness of guilt, under the circumstances here, defendant's statement is not necessarily incriminating. Rather, it can be equally construed as an acknowledgment of his having been arrested eight years after the victim's death.

Thus, in considering the totality of circumstances surrounding the encounter here, we conclude that defendant's statement was not the product of an interrogation and the trial court did not err in admitting it.

ECF No. 15, ex. N at 6-9.

Mr. Pena has failed to rebut by clear and convincing evidence the findings of fact by the Colorado Court of Appeals.  Hence, I accept as correct the findings of fact by the state appeals court in rejecting Mr. Pena's *Miranda* argument.  *See* 28 U.S.C. § 2254(e)(1).  Based upon undisputed facts that Mr. Pena was in custody at the time of the lead investigator's statement, the state appeals court turned its focus to the issue of whether the comment resulted from interrogation. The state appellate court evaluated Mr. Pena's claim under a state law totality-of-the-circumstances test similar to the federal standard, as well as *Miranda* and *Innis*, and determined that Mr. Pena's response to the investigator's statement was not necessarily incriminating or the product of an interrogation.  Based on my review of the record, I do not find that the Colorado Court of Appeals decision

was contrary to, or an unreasonable application of, Supreme Court precedent,

nor do I conclude that the decision by the state appeals court was based on an

unreasonable determination of the facts in light of the evidence presented in the

state court proceeding.  *See* 28 U.S.C. § 2254(d).

### Claim 2(d)

As his next claim, Mr. Pena alleges that the trial court's admission of two

assaults violated his rights under the Confrontation Clause.  The first assault (the

"sexual assault") stemmed from the victim reporting to her aunt, a school

counselor, and to Weld County, Colorado, authorities that on August 6, 1992,

Mr. Pena allegedly forced her to have sex, resulting in Weld County charging

Mr. Pena with one count of sexual assault on a child, a charge which

investigating officers testified the victim later recanted and asked authorities to

withdraw.  The charge remained pending at the time the victim disappeared.  The

second assault (the "physical assault"), which occurred after the Weld County

sexual assault charges, stemmed from the victim disclosing to her mother and

aunt that, during an argument over the sexual assault charges, Mr. Pena kicked

her in the chest with hard-toed boots, bruising her as a result.

The Confrontation Clause of the Sixth Amendment provides:  "In all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with

the witnesses against him."  In *Crawford v. Washington*, 541 U.S. 36 (2004), the

United States Supreme Court held that a trial court's admission of testimonial

hearsay against a defendant at trial violates the defendant's confrontation rights

17

unless the witness is unavailable and there was a prior opportunity for cross-examination.  Although *Crawford* did not define testimonial precisely, *id.* at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"), the term encompasses formal statements to government officers, including at a minimum statements during police interrogation and prior testimony.  *See id.* at 51-52, 68.  "The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Id.* at 59 n.9.

The Confrontation Clause applies only to testimonial hearsay.  *See Davis v. Washington*, 547 U.S. 813, 823-26 (2006).  In so holding, the *Davis* Court referred to its earlier statement in *Crawford*:

> The text of the Confrontation Clause reflects this focus [on testimonial hearsay].  It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'  *Ibid.*  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Id.* at 823-24 (quoting *Crawford*, 541 U.S. at 51).  The United States Court of Appeals for the Tenth Circuit (Tenth Circuit) has defined a testimonial statement as "a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime." *United States v. Pablo*, 625 F.3d 1285, 1291 (10th Cir. 2010).

Before trial, the prosecution filed a notice of intent to introduce evidence of Mr. Pena's prior sexual assault of the victim.  R. vol. 1, 28-31, May 8, 2001. The prosecution maintained the evidence of the sexual assault was probative of Mr. Pena's motive and malice, helpful to establish his identity as the victim's murderer, and properly was admitted as res gestae evidence that helped explain the charged offense or, alternatively, as prior bad act evidence under Colo. R. Evid. 404(b).  ECF No. 15, ex. N at 10; R. vol 1, 29.  At a hearing on the prosecution's motion and over defense objections, the trial court granted the motion to admit the evidence.  ECF No. 15, ex. N at 10-11; *see also* R. vol. 5, 5-7, Aug. 8, 2001.

After opening statements at trial, the defense asked the court to prohibit the victim's mother from testifying about what the victim told her concerning the alleged prior physical assault.  ECF No. 15, ex. N at 11; *see also* R. vol. 15, 33-35, Dec. 11, 2001.  The prosecution argued that, like evidence of the alleged sexual assault, the victim's statements were proper res gestae evidence of the charged offense, would show that Mr. Pena and the victim had a heated argument concerning the sexual assault charges, during which Mr. Pena hit and kicked the victim in the chest with metal boots, and established a chain of events ultimately concluding with the victim's death as a result of Mr. Pena's deliberate actions.  ECF No. 15, ex. N at 11; *see also* R. vol. 15, 35-38, Dec. 11, 2001.

The defense again objected, claiming that testimony concerning the fight would be unfairly prejudicial and the incident was too remote in time and

unrelated to the criminal charges to be considered res gestae evidence.  ECF No. 15, ex. N at 11; *see also* R. vol. 15, 38-40, Dec. 11, 2001.  The trial court again disagreed and permitted the victim's mother to testify as to the fight, concluding that evidence of the fight was related to and explained the crime of which Mr. Pena was accused.  ECF No. 15, ex. N at 11-12; *see also* R. vol. 15, 40, Dec. 11, 2001.

In affirming, the Colorado Court of Appeals agreed that the victim's out-of-court statements to police concerning the sexual assault, which included a taped interview that described a forcible rape, were not testimonial, and therefore did not violate the Confrontation Clause, since the statements were relevant without regard to their truthfulness.  ECF No. 15, ex. N at 15-17, 20-21.  The state appellate court also found that the statements concerning the physical assault, although offered for their truth, ECF No. 15, ex. N at 17, were not testimonial, and therefore did not violate the Confrontation Clause, because they were made to relatives and not formal or sworn statements made to law enforcement officers or other public officials "with any expectation that they would be used in any future proceedings," and did not result from questioning or interrogation.  *Id.* at 20.

Again, the state courts' factual findings are afforded a presumption of correctness on habeas review.  Mr. Pena does not allege, let alone establish by clear and convincing evidence, that the Colorado Court of Appeals' factual conclusions were unreasonable, given the trial evidence.  Applying *Crawford*, the

state appeals court determined that the statements concerning the assaults did

not qualify as testimonial.  Based on my review of the record, I do not find that

the state appellate court's resolution of Mr. Pena's Confrontation Clause claim

was contrary to or an reasonable application of controlling Supreme Court law.

Mr. Pena, therefore, is not entitled to federal habeas relief on this claim.

### Claim 6

As his sixth and final remaining claim, Mr. Pena alleges that he received

ineffective assistance of counsel.  He specifically alleges that:

> a.  Trial counsel failed to object to (and request a mistrial based on) a witness's references to rumors that members of applicant's family had threatened to kill other witnesses.  ECF No. 1 at 50-56.

> b.  Trial counsel failed to object to "various hearsay and other act evidence," specifically,

>> i.      The kicking incident,

>> ii.     Evidence that applicant's uncle beat his girlfriend, and

>> iii.    Evidence that applicant's brother assaulted his girlfriend.  ECF No. 1 at 56-57.

> c.      Trial counsel failed to explain that Oscar Prospero's death was unrelated to the victim's murder.  ECF No. 1 at 59-62.

> d.      The cumulative effect of counsel's unprofessional errors caused sufficient prejudice to require a new trial.  ECF No. 1 at 60-61.

It was clearly established when Mr. Pena was convicted that a defendant

has a right to effective assistance of counsel.  *See Strickland v. Washington*, 466

U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Pena must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Mr. Pena's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  "For counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

Under the prejudice prong, Mr. Pena must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In determining whether Mr. Pena has established prejudice, the Court must look at the totality of the evidence presented at trial and not just the evidence that is helpful to Applicant.  *See Boyd*, 179 F.3d at 914.

Ineffective-assistance-of-counsel claims are mixed questions of law and fact.  *See Strickland*, 466 U.S. at 698.  Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief.  *See Humphreys v. Gibson*, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).  If Mr. Pena fails to satisfy either prong

of the *Strickland* test, the ineffective assistance of counsel claims must be

dismissed.  *See Strickland*, 466 U.S. at 697.

Here, the Colorado Court of Appeals evaluated Mr. Pena's ineffective-

assistance-of-counsel claims under *Strickland.*  ECF No. 15, ex. E at 4-5.

### Claim 6(a)

I first will address claim 6(a) that trial counsel failed to object to (and

request a mistrial based on) a witness's references to rumors that members of

applicant's family had threatened to kill other witnesses.

At trial, the prosecution asked its witness, Christine Cantu, Mr. Pena's

former girlfriend, whether she was uncomfortable testifying.  ECF No. 15, ex. E at

6.  The witness responded affirmatively, saying, "there [are] rumors going around

from [Pena]'s brothers . . . saying anyone that testifies against [Pena] that they

are going to kill them like how [Pena] killed [C.Z.]."  *Id.*; *see also* R. vol. 16, 178,

Dec. 12, 2001; ECF No. 15, ex. G (people's answer brief) at 32-33.  Mr. Pena's

counsel did not object to this statement.  ECF No. 15, ex. E at 6; *see also* R. vol.

16, 178, Dec. 12, 2001; ECF No. 15, ex. G at 32-33.

In resolving the claim, the state appeals court looked to counsel's

postconviction testimony, in which she admitted Christine Cantu's statement

caught her off guard, shocked her, and came up so quickly she did not object.

ECF No. 15, ex. E at 8.  Counsel also explained she chose not to object or seek

a mistrial because she (1) wanted to avoid drawing the jury's attention to

Christine Cantu's statement, (2) believed she could undermine and discredit

Christine Cantu's statement on cross-examination, and (3) liked the jury in the ongoing trial. *Id.*

Applying the *Strickland* standard, the state appeals court agreed with the postconviction court's conclusion that Mr. Pena failed to prove counsel's decisions not to object or request a mistrial were not strategic. Based on my review of the record, I do not find that the Colorado Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court law. Claim 6(a) does not warrant habeas corpus relief.

### Claim 6(b)

In claim 6(b), Mr. Pena contends trial counsel failed to object to "various hearsay and other act evidence," specifically (i) the kicking incident, (ii) evidence that Mr. Pena's uncle beat his girlfriend, and (iii) evidence that Mr. Pena's brother assaulted his girlfriend.

### Claim 6(b)(i)

I first will address Mr. Pena's contention that trial counsel failed to object to hearsay evidence of the kicking incident. As discussed above in claim 2(d), the defense did object to the kicking incident, claiming that testimony concerning the incident would be unfairly prejudicial and the incident was too remote in time and unrelated to the criminal charges to be considered res gestae evidence. ECF No. 15, ex. N at 11; *see also* R. vol. 15, 38-40, Dec. 11, 2001. The objection was unsuccessful. The trial court disagreed and permitted the victim's mother to testify as to the fight, concluding that evidence of the fight was related

to and explained the crime of which Mr. Pena was accused.  ECF No. 15, ex. N at 11-12; *see also* R. vol. 15, 40, Dec. 11, 2001.

On direct appeal, the Colorado Court of Appeals, while holding that statements as to the kicking incident did not violate the Confrontation Clause as interpreted in *Crawford*, found the physical assault statements to be inadmissable as hearsay, because they were offered for their truth and not admissible under any hearsay exception.  ECF No. 15, ex. N at 22.  The state appeals court ultimately concluded the error in admitting statements concerning the kicking incident was not plain error because the incident was cumulative of other, properly admitted evidence of Mr. Pena's animosity toward C.Z., including his statements to others that he was going to kill her.  *Id.* at 22-23; *see also* ECF No. 15, ex. E at 10-11.

On postconviction review, the state appeals court rejected the argument Mr. Pena raises in the instant application that if trial counsel had lodged a hearsay objection (1) the Colorado Court of Appeals would have applied harmless error, rather than plain error, to his hearsay claim, (2) the Colorado Court of Appeals would have found that admission of hearsay was not harmless error; and (3) counsel's failure to make the hearsay objection prejudiced him.  ECF No. 1 at 59.

The Colorado Court of Appeals, assuming that the absence of a hearsay objection was deficient performance under *Strickland*, concluded that any deficiency did not prejudice Mr. Pena.  Specifically, the court reasoned that:

> The postconviction court found, and we agree, that there was considerable information that pointed to Pena's animosity toward C.Z. as a result of the sexual assault report, including evidence that he made several attempts to have the charges dropped and made statements to several people that he was mad at C.Z. and would kill her.  In light of this evidence, even under a harmless error standard of review, any prejudice caused by the inadmissible hearsay that Pena had kicked C.Z. in the chest was merely cumulative of other properly admitted evidence that Pena was so angry with C.Z. for reporting the sexual assault that he intended to kill her if the charges were not dropped.

ECF No. 15, ex. E at 11.

Applying *Strickland*, the state appeals court agreed with the postconviction court's conclusion that Mr. Pena failed, under the prejudice prong, to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Based on my review of the record, I do not find that the Colorado Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court law. Since Mr. Pena fails to satisfy the prejudice prong of the *Strickland* test, the ineffective-assistance-of-counsel claim must be dismissed.  *See id.* at 697. Claim 6(b)(i) does not warrant habeas corpus relief.

### Claims 6(b)(ii) and 6(b)(iii)

I next will address Applicant's contentions that trial counsel failed to object to evidence that Mr. Pena's uncle beat his girlfriend (claim 6(b)(ii)) and that Mr. Pena's brother assaulted his girlfriend (claim 6(b)(iii)).

These claims concern the testimony of two prosecution witnesses, Judy

Diaz and Sara Bilyeu.  As to claim 6(b)(ii), Judy Diaz testified that, on the night of

December 12, 1992, Mr. Pena told her boyfriend at the time, who is Mr. Pena's

uncle, Mario Garcia, that he "might have" killed somebody and that the body was

at the farm of his other uncle, Natividad or "Nati."  ECF No. 1 at 46-47; *see also*

R. vol. 17, 66-67, 81, 85, Dec. 13, 2001.  She then testified that her boyfriend

warned her not to say anything or he would kill her, R. vol. 17, 72, 83-84, Dec.

13, 2001, and that Mario Garcia beat her in the past.  *Id.* at 59, 85.  As to claim

6(b)(iii), Sara Bilyeu testified that her ex-husband, Mr. Pena's brother Jamie

Pena, physically abused her.  ECF No. 1 at 45-46; *see also* R. vol. 17, 271-72,

275-77, Dec. 13, 2001.

Mr. Pena raised these claims in his postconviction appeal, ECF No. 15,

ex. H (Jose Pena's opening brief), asserting that the state conviction court

applied the wrong standard of deficient performance in assessing them.  ECF

No. 15, ex. H at 23-24.  While Mr. Pena acknowledges that the postconviction

court was familiar with the first prong of *Strickland*, he maintains that the court

stated it incorrectly.  *Id.* at 23; ECF No. 1 at 58-59.  What Mr. Pena – and the

state appeals court – do not discuss is how, if at all, defense counsel's failure to

object to the testimony by these prosecution witnesses prejudiced the outcome of

the trial, the second prong of the *Strickland* analysis.

As previously stated, a claim may be adjudicated on the merits in state

court even in the absence of a statement of reasons by the state court for

rejecting the claim. *Richter*, 131 S. Ct. at 784-85. *Richter* is applicable when a state-court opinion addresses some but not all of those claims. *Johnson*, 133 S. Ct. at 1094-98. When a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, I must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96. I should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *See id.*

Therefore, pursuant to *Johnson*, the deferential standards of § 2254(d) apply. Despite the fact that the state courts did not expressly address the claim that trial counsel violated the *Strickland* prejudice standard by failing to object to Judy Diaz and Sara Bilyeu's testimony, I will assume the claim was adjudicated on its merits.

I have reviewed the testimony of these prosecution witnesses. Even if defense counsel should have objected to the testimony of the prosecution witnesses, it is not reasonably probable that their testimony affected the outcome of the trial. *See Strickland*, 466 U.S. at 694 (under the prejudice prong, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Judy Diaz and Sara Bilyeu's testimony was not relevant to the acts committed by Mr. Pena. Judy Diaz's testimony, R. vol. 17, 54-86, Dec. 13, 2001, included discussion of her prior convictions, statements she made to the police

who contacted her about her knowledge of the victim's death, how she knew

Mr. Pena and his extended family, what she overheard the night of the twelfth of

December 1992 when Mr. Pena showed up at the house she then shared with

Mario Garcia, how Mario Garcia hit her, and that she was not trying to retaliate

against Mr. Pena through her testimony.  Sara Bilyeu's testimony, R. vol. 17,

269-278, December 13, 2001, included how she and Jamie Pena had a child

together and were divorced because he physically abused her, how she knew

Mr. Pena's extended family, how she hated and was afraid of Jamie Pena,

whether she ever heard anything from him about the victim, and how she was

testifying because she believed it was "the right thing to do."  *Id.* at 276.

My review of the state court record reveals that this testimony is not

relevant to Mr. Pena's conviction for the murder of C.Z.  Moreover, there was

substantial evidence without these prosecution witnesses to convict Mr. Pena.

On direct appeal, the Colorado Court of Appeals, found corroborating evidence

from Mr. Pena's mother for the prosecution's theory that the victim's allegations

of sexual assault and her apparent inability to get the resulting charges

dismissed were a source of anger and frustration to Mr. Pena, and constituted a

probable motive for the killing.  ECF No. 15, ex. N at 16-17.  Mr. Pena's mother

testified as to the efforts undertaken by Mr. Pena, with her participation, in

attempting to convince the victim and law-enforcement officers that the charges

should be dismissed.  *Id.* at 17.  The state appeals court found "[t]here was other

properly admitted and ample evidence of Mr. Pena's animosity toward the victim

arising from the then pending sexual assault charges, including statements to others that [Mr. Pena] was going to kill the victim and efforts to get the victim to have the charges dismissed." *Id.* at 17-18.  The appellate court further found that the error of admitting the physical assault statements for their truth "did not  . . . cast serious doubt upon the fairness of trial proceedings or the validity of the verdict," *id.*, and that the statements were offered "to show a history of the animosity [Mr. Pena] had against the victim that was predicated on the pending sexual assault charges and her unwillingness or inability to get them dismissed." *Id.* at 22-23.

On postconviction appeal, the Colorado Court of Appeals agreed with the postconviction court that:

> [T]here was considerable information that pointed to Pena's animosity towards C.Z. as a result of the sexual assault report, including evidence that he made several attempts to have the charges dropped and made statements to several people that he was mad at C.Z. and would kill her.

ECF No. 15, ex. E at 11.

Because testimony of Judy Diaz and Sara Bilyeu does not appear to be relevant to the acts committed by Mr. Pena, I do not find that the testimony violated the prejudice prong of the *Strickland* standard.  Mr. Pena has failed to establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Based on my review of the record, I do not find that the Colorado Court of

Appeals' decisions were contrary to Supreme Court law.  Claims 6(a)(b)(ii) and

(b)(iii) do not warrant habeas corpus relief.

**Claim 6(c)**

In claim 6(c) Mr. Pena faults defense counsel for failing to clarify that the

death of Oscar Prospero (O.P.) before trial was unrelated to the victim's murder

and not attributable to applicant.  ECF No. 1 at 59-62; *see also* R. vol. 18, 172,

Dec. 14, 2001.  Oscar Prospero had been seen leaving a bar with Jose Pena and

the victim on the evening of December 12, 1992.  R. vol. 18, 164, Dec. 14, 2001.

On postconviction review, the Colorado Court of Appeals found the following

facts to be relevant to the issue:

> O.P. was with C.Z. and Pena the night she was
> last seen alive.  After C.Z.'s body was found, police
> interviewed O.P. several times.  In 1994,
> approximately one year later, O.P. was injured in a
> car accident that left him a paraplegic.  In 2001, O.P.
> underwent several surgeries and developed health
> complications.  He was able to testify at Pena's
> preliminary hearing, but died approximately five
> months before trial.

> Because O.P. was not available to testify,
> O.P.'s statements to police were excluded at trial.
> During trial, the prosecutor asked the detective who
> had interviewed O.P., "Where is O.P. now?"  To which
> the detective responded, "[O.P.] died April 17th of
> 2001 at the Platte Valley Medical Center."  During its
> deliberations, the jury asked the court:  "What
> happened to [O.P.]?  How did he die?  And was he
> ever questioned?"

> The court instructed the jury, "You have
> received all of the evidence that you are going to
> receive, at this point.  You have to decide based on
> the evidence you have."

ECF No. 15, ex. E at 12-13.

In rejecting Mr. Pena's ineffective-assistance-of-counsel claim, the Colorado Court of Appeals, like the postconviction court, treated counsel's failure to clarify that Oscar Prospero's death was not attributable to Applicant as "at most a strategic error," ECF No. 15, ex. E at 13, and found that Mr. Pena had failed to demonstrate he was prejudiced by counsel's error.  The appeals court concluded Mr. Pena's "assumption" that the jury's questions indicated their belief he had killed Oscar Prospero was "speculative at best" and "insufficient to satisfy his burden of proving facts that would allow a postconviction court to find that he was prejudiced by his counsel's failure to clarify that O.P. died of causes unrelated to the case."  *Id.*  Applying the *Strickland* prejudice standard, *id.* at 14, the state appeals court agreed with the postconviction court's conclusion that Mr. Pena failed to demonstrate "the outcome of the proceeding would have been different if trial counsel had clarified that neither Pena nor his family was involved in O.P.'s death."  Based on my review of the record, I do not find that the Colorado Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court law.  Claim 6(c) does not warrant habeas corpus relief.

### Claim 6(d)

This claim argues that the cumulative effect of counsel's unprofessional errors caused sufficient prejudice to require a new trial.

First, the Court notes that the Supreme Court has not directly addressed the applicability of the cumulative-error doctrine in the context of an ineffective-assistance-of-counsel claim.  *See Forrest v. Florida Dep't of Corrections*, 342 F. App'x 560, 564-65 (11th Cir. 2009) (citing *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) ("[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."); *see also Darks v. Mullin*, 327 F.3d 1001, 1017 (10th Cir. 2003) (finding it unnecessary to address the issue of cumulative error as a separate constitutional ground for granting habeas relief).

The Tenth Circuit has held that a cumulative-error analysis aggregates all errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. *See Cargle v. Mullins*, 317 F.3d 1196, 1206 (10th Cir. 2003); *see also Welch v. Sirmons*, 451 F.3d 675, 710 (10th Cir. 2006) (same).  Thus, "'to deny cumulative-error consideration of claims unless they have first satisfied their individual substantive standards for actionable prejudice would render the cumulative error inquiry meaningless, since it [would] . . . be predicated only upon individual error already requiring reversal'".  *Cargle*, 317 F.3d at 1207

(internal quotation marks and citation omitted); *see also Moore v. Reynolds*, 153

F.3d 1086, 1113 (10th Cir. 1998) ("[c]umulative error analysis applies where

there are two or more actual errors; it does not apply to the cumulative effect of

non-errors").

The Colorado Court of Appeals noted that the "[c]umulative error analysis

aggregates each of the individual errors that have been deemed harmless and

analyzes whether their cumulative effect is such that they cannot be deemed

harmless." ECF No. 15, ex. E at 15. The state appeals court, having reviewed

the trial transcript in its entirety, concluded that the assumed trial errors of

counsel "were neither so numerous nor so prejudicial as to have deprived

defendant of a fair trial." *Id.*

Here, the Colorado Court of Appeals found no deficient performance as to

claim 6(a). It also found no prejudice as to claims 6(b)(ii) and (iii) and 6(c). That

leaves only claim 6(b)(i), i.e., counsel's failure to object to hearsay evidence of

the kicking incident. Even assuming the absence of a hearsay objection was

deficient performance under *Strickland*, the Colorado Court of Appeals again

concluded the deficiency did not prejudice Mr. Pena. There are not two or more

actual errors that combine to satisfy a cumulative-error claim. Although the state

appellate court applied a state law standard in addressing Mr. Pena's cumulative-

error claim, that standard was the same as the Tenth Circuit standard. Mr.

Pena's cumulative-error claim has failed to meet that Tenth Circuit standard.

Claim 6(d) is meritless.

## IV.  Conclusion

For the reasons stated above, habeas corpus relief will be denied.

Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that
any appeal from this order would not be taken in good faith and therefore in
forma pauperis status will be denied for the purpose of appeal.  *See Coppedge v.
United States*, 369 U.S. 438 (1962).  If Mr. Pena files a notice of appeal he also
must pay the full $455.00 appellate filing fee or file a motion to proceed in forma
pauperis in the United States Court of Appeals for the Tenth Circuit within thirty
days in accordance with Fed. R. App. P. 24.

Accordingly, it is

ORDERED that the motion titled "Motion to Reconsider Dismissal of
Claims 2(c) and 4 and Objection to Court's Partial Dismissal of Those Claims"
(ECF No. 23) that Applicant, Jose Arturo Pena, filed on November 7, 2012, is
**DENIED**.  It is

FURTHER ORDERED that the habeas corpus application is **DENIED**, and
the action is **DISMISSED WITH PREJUDICE**.  It is

FURTHER ORDERED that each party shall bear his own costs and
attorney's fees.  It is

FURTHER ORDERED that no certificate of appealability will issue
because Applicant, Jose Arturo Pena, has not made a substantial showing of the
denial of a constitutional right.  It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal

is **DENIED**.

Dated:  May 28, 2013.

BY THE COURT:


s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE