IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No. 12-cv-01363-WYD

JOSE ARTURO PENA,

      Applicant,

v.

S. HARTLEY, Warden, Arkansas Valley Corr. Fac., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

    This matter is before me on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) (the "Application") filed *pro se* by Applicant, Jose Arturo Pena.  Pursuant to the mandate of the United States Court of Appeals for the Tenth Circuit, only claims 2(c) and 4 in the Application remain to be addressed on the merits.  Respondents have filed an Answer to Remanded § 2254 Claims ("the Answer") (ECF No. 40) and Mr. Pena has filed Applicant's Traverse to Remanded § 2254 Claims ("the Traverse") (ECF No. 43).  After reviewing the record, including the Application, the Answer, the Traverse, and the state court record, I conclude Mr. Pena is not entitled to relief on his remaining claims.

## I. BACKGROUND

    Mr. Pena is a prisoner in the custody of the Colorado Department of Corrections. He is challenging the validity of his conviction and sentence in Adams County District Court case number 93CR1195.

Defendant, then eighteen, and the victim, then fourteen, had had a consensual sexual relationship. However, the victim reported that defendant raped her in August 1992, and charges with respect to that incident were pending.  Defendant and his mother had attempted to persuade the victim to have the charges dismissed, and, on one occasion, the victim said that defendant physically assaulted her because the charges had not been dismissed.

On the evening of December 12, 1992, defendant and the victim left a bar together with one of defendant's friends. Several witnesses reported seeing the three of them drive away from the bar in defendant's truck.  The victim was not seen again alive.

The day after the victim's disappearance, defendant's parents sold his truck.  Defendant left the state approximately five days later, ultimately traveling to Mexico. Several days thereafter, land surveyors discovered the victim's body lying in a ditch partially covered by snow.  A coroner's examination revealed that the victim had died as a result of blunt force trauma to the head.

In September 1993, defendant was charged with the victim's murder, and a warrant for his arrest was issued. Defendant was not, however, apprehended until January 2001, when he was arrested under an assumed name at a random traffic checkpoint in New Mexico.

After signing a waiver of extradition, defendant was transported to Colorado by officers from the Adams County Sheriff's Department.  Following a trial to a jury in December 2001, he was convicted of one count of after deliberation first degree murder and was sentenced to life in prison without the possibility of parole.

*People v. Pena*, No. 02CA0413 (Colo. App. Oct. 13, 2005) (unpublished), slip op. at 1-2

(ECF No. 15-14 at 3-4).  The judgment of conviction was affirmed on direct appeal.

As noted above, the only claims remaining to be considered are claims 2(c) and

4 in the Application.  Mr. Pena contends in claim 2(c) that admission of evidence of his

prior assaults on the victim violated his right to a fair trial.  He contends in claim 4 that

2

admission of other allegedly inadmissible and prejudicial evidence also violated his right

to a fair trial.

## II.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Mr. Pena liberally

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519,

520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

However, I should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Pena bears the burden of proof under § 2254(d).  *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*,

562 U.S. 86, 98-99 (2011).  In particular, "determining whether a state court's decision

resulted from an unreasonable legal or factual conclusion does not require that there be

an opinion from the state court explaining the state court's reasoning."  *Id.* at 98.  Thus,

"[w]hen a federal claim has been presented to a state court and the state court has

denied relief, it may be presumed that the state court adjudicated the claim on the

3

merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.  In other words, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question I must answer under § 2254(d)(1) is whether Mr. Pena seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

4

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id.* at 1018.

    If a clearly established rule of federal law is implicated, I must determine whether

the state court's decision was contrary to or an unreasonable application of that clearly

established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id.* at
> 407-08.

*House*, 527 F.3d at 1018.

    My inquiry pursuant to the "unreasonable application" clause is an objective

inquiry.  *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the

writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.

Rather that application must also be unreasonable."  *Id.* at 411.  "[A] decision is

'objectively unreasonable' when most reasonable jurists exercising their independent

judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted).  In conducting this analysis, I "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  *Id.* at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.  Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Pena bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, my analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).  "Unless the error is a structural defect in the trial that defies harmless-error analysis, [I] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review).  Under *Brecht*, a constitutional error does not warrant habeas relief unless I conclude it "had substantial and injurious effect" on the jury's verdict.  *Brecht*, 507 U.S. at 637.  "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).  "Grave doubt" exists when "the matter is so

7

evenly balanced that [I am] in virtual equipoise as to the harmlessness of the error."

*O'Neal*, 513 U.S. at 435.  I make this harmless error determination based upon a review

of the entire state court record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th

Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is

not procedurally barred, I must review the claim *de novo* and the deferential standards

of § 2254(d) do not apply.  *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III.  <u>MERITS OF APPLICANT'S REMAINING CLAIMS</u>

#### A.  <u>Claim 2(c)</u>

Mr. Pena contends in claim 2(c) that admission of evidence of his prior assaults

on the victim violated his right to a fair trial.[1]  The Colorado Court of Appeals described

the relevant background for this claim as follows:

> Prior to trial, the prosecution filed a notice of intent to introduce evidence of defendant's prior violent acts toward the victim as res gestae evidence or, in the alternative, as prior bad act evidence under CRE 404(b).  According to the prosecution, this evidence was probative of defendant's motive and malice in the case, would help establish his identity as the victim's murderer, and was properly admissible as res gestae evidence of the charged offense.

> The victim reported to authorities that defendant sexually assaulted her on August 6, 1992, and he was charged with sexual assault on a child.  The investigating officers testified that the victim later recanted her allegation and asked authorities to withdraw the charge.  However, the charge remained pending at the time the victim disappeared.

---

[1]To the extent Mr. Pena continues to argue that admission of this evidence also violated his constitutional right to confrontation, I previously rejected the confrontation claim on the merits and the confrontation claim was not included in the Tenth Circuit's mandate.  Therefore, the confrontation claim is not properly before me.

At a hearing on the prosecution's motion, defendant objected to the introduction of the evidence of the sexual assault on grounds that it was unrelated to the charged offense, was unduly prejudicial, and did not constitute res gestae evidence.  The trial court disagreed and granted the prosecution's motion to admit the evidence.

Following opening statements at trial, defendant requested that the court prohibit the victim's mother from testifying about what the victim had told her concerning an alleged prior physical assault.  The prosecution asserted that, like the evidence of the alleged sexual assault, the victim's statements were proper res gestae evidence of the charged offense and would show that defendant and the victim had a heated argument concerning the sexual assault charges during which defendant hit and kicked the victim in the chest with metal boots.  According to the prosecution, the evidence established a chain of events that ultimately ended with the victim's death as a result of defendant's deliberate actions.

In response, defendant again objected on the basis that any testimony concerning the fight would be unfairly prejudicial and the incident itself was too remote in time and unrelated to the charge in the instant case to be considered res gestae evidence.  The trial court again disagreed and permitted the victim's mother to testify as to the matter.  The trial court concluded that the evidence of the fight was related to and explained the crime of which defendant was accused.

(ECF No. 15-14 at 10-12.)

I note initially that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, "[h]abeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights

results." *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000).  Introduction of

evidence fails the due process test of "fundamental fairness" only if the evidence "is so

extremely unfair that its admission violates fundamental conceptions of justice."

*Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal quotation marks omitted).

As this description of fundamental unfairness demonstrates, the Supreme Court has

"defined the category of infractions that violate 'fundamental fairness' very narrowly."

*Id.*; *see also Sanborn v. Parker*, 629 F.3d 554, 576 (6th Cir. 2010) ("clearly established

federal law provides that, for prejudice to be unfair in the constitutional sense, it must fit

within a very narrow category of infractions").

     "[B]ecause a fundamental-fairness analysis is not subject to clearly definable

legal elements, when engaged in such an endeavor a federal court must tread gingerly

and exercise considerable self restraint."  *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir.

2002) (internal quotation marks omitted).  My "[i]nquiry into fundamental unfairness

requires examination of the entire proceedings, including the strength of the evidence

against the petitioner."  *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (per curiam).

     The Colorado Court of Appeals rejected Mr. Pena's claim that admission of the

evidence at issue in claim 2(c) violated his constitutional right to a fair trial and explained

its determination as follows:

> Evidence of other offenses or acts that are not
> extrinsic to the charged offense, but are part of the criminal
> episode or transaction with which the defendant is charged,
> is admissible to provide the fact finder with a full and
> complete understanding of the events surrounding the crime
> and the context in which the charged crime occurred.  This
> res gestae evidence is not subject to the general rule that
> excludes evidence of prior criminality.  People v. Quintana,

882 P.2d 1366 (Colo. 1994); People v. Valdez, 56 P.3d 1148 (Colo. App. 2002).

Res gestae evidence is generally linked in time and circumstances with the charged crime, forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury. People v. Bernabei, 979 P.2d 26 (Colo. App. 1998). It has been defined as "matter incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute part of the transaction, and without a knowledge of which the main fact might not be properly understood." Woertman v. People, 804 P.2d 188, 190 n.3 (Colo. 1991) (quoting Martinez v. People, 55 Colo. 51, 53-54, 132 P. 64, 65 (1913)).

To be admissible, res gestae evidence must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice. People v. Rollins, 892 P.2d 866 (Colo. 1995).

Here, the trial court admitted the statements the victim made to her family members that defendant had, in one instance, sexually assaulted her and, in another, beaten and kicked her. The victim's taped statement to the police pertaining to the alleged sexual assault was played for the jury; and the officers handling the sexual assault case were permitted to testify that they were approached in mid-August by the victim, defendant's mother, and defendant to drop the sexual assault charges. The officers further testified that they were advised that the victim and defendant wanted to get married, wanted the charges dismissed, and wanted the return of defendant's truck, which had been seized in the course of the sexual assault investigation.

We conclude that this evidence was properly admitted as res gestae evidence. The evidence indicates there was a violent relationship between the victim and defendant that commenced with the alleged sexual assault, continued with efforts to get the sexual assault charges dismissed, and included an apparently related violent attack on the victim. The evidence also established the basis for a continuing dispute or stress between the parties.

11

Nor were the events too remote in time.  "Res gestae" evidence includes events closely related in time and nature to the charged offense.  People v. Martinez, 24 P.3d 629 (Colo. App. 2000).  The alleged sexual assault occurred in early August, the charges were brought in early September, and the victim disappeared in mid-December, all in 1992.  In the interim, the evidence indicated that defendant had placed pressure on the victim to withdraw the charges and assaulted her when the charges were not dismissed.  All this evidence is linked to the victim's disappearance in mid-December 1992.

Finally, the trial court gave the jury a limiting instruction prior to the testimony of the mother and the aunt, and in the final instructions.  The limiting instructions, with variations in language, instructed the jury that the testimony relating to the sexual and physical assaults was admitted solely on the issue of motive and that it could not be used for any other purpose.  Absent evidence to the contrary, we presume that the jury followed the instruction.  See People v. Ellsworth, 15 P.3d 1111 (Colo. App. 2002).

Therefore, we conclude that the trial court did not err in admitting the testimony as res gestae evidence.

(ECF No. 15-14 at 12-15.)

Mr. Pena does not contend that this analysis is contrary to *Dowling*.  In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case.  *See House*, 527 F.3d at 1018.  Furthermore, even though the Colorado Court of Appeals did not cite *Dowling* or any other federal case, it is apparent that the state court applied the correct governing principle, i.e., whether admission of evidence of the prior sexual and physical assaults was unfairly prejudicial.  As the Tenth Circuit has noted in this context, fundamental unfairness is not shown "unless the probative value of [the challenged] evidence is so greatly outweighed by the

prejudice flowing from its admission that the admission denies defendant due process of law." *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (internal quotation marks omitted).

Considered in light of the entire record and the evidence presented against him at trial, Mr. Pena also fails to demonstrate the state court's ruling is an unreasonable application of the very general standard in *Dowling*. For one thing, Mr. Pena's arguments regarding the admissibility of the res gestae evidence under state law are not relevant to my analysis of whether a constitutional violation occurred. *See Estelle*, 502 U.S. at 67-68. With respect to his constitutional right to due process, Mr. Pena fails to demonstrate the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Under *Dowling*, "mere prejudice to a defendant does not mean that such prejudice is *unfair*; indeed, *all* evidence tending to prove guilt is prejudicial to a criminal defendant." *Sanborn*, 629 F.3d at 576 (internal quotation marks omitted).

I agree with the state courts that evidence Mr. Pena recently had sexually and physically assaulted the victim was relevant to the issue of motive with respect to the murder charge. Furthermore, I must presume the jury followed the limiting instructions given by the trial court both when the evidence was introduced and in the final instructions. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the existence of an "almost invariable assumption of the law that jurors follow their instructions"). Thus, any potential for unfair prejudice stemming from introduction of this evidence was minimized. *See Smallwood v. Gibson*, 191 F.3d 1257, 1277 (10th Cir. 1999) (noting

13

that a proper jury instruction can cure error in admitting evidence of a defendant's prior

crimes or bad acts).  As a result, Mr. Pena fails to demonstrate his trial was

fundamentally unfair and he is not entitled to relief on claim 2(c).

### B.  <u>Claim 4</u>

Mr. Pena contends in claim 4 that introduction of other allegedly inadmissible and

prejudicial evidence also violated his right to a fair trial.  The clearly established federal

law pertinent to claim 4 is the fundamental unfairness standard in *Dowling*.

The specific evidence Mr. Pena complains about in claim 4 was identified by the

Colorado Court of Appeals on direct appeal as follows:

> (1) the testimony elicited by the prosecution from
> defendant's former girlfriend, a prosecution witness, that she
> was nervous appearing in court to testify because there were
> "rumors going around from [defendant's] brothers . . . saying
> anyone [who] testifies against [defendant] that they are going
> to kill them like how [defendant] killed [the victim]"; (2) the
> prosecution's question on cross-examination of defendant's
> brother as to whether the brother had told his common law
> wife that "it was more likely than not that [his] brother
> [defendant] had killed [the victim]"; (3) testimony that
> defendant's brother had beaten his common law wife and
> had threatened her if she went to the police; (4) testimony
> that defendant's uncle had beaten his former girlfriend and
> had threatened her not to go to the police or she would end
> up like the victim; and (5) a detective's testimony, elicited by
> the prosecution, that defendant's friend, who had left the bar
> with defendant and the victim on December 12, 1992, had
> died in April 2001, and the prosecution's failure then to
> inquire into the actual cause of death, thereby creating
> conjecture that the friend was killed at defendant's directive
> (as opposed to dying of natural causes, as was the case).

(ECF No. 15-14 at 26-27.)  Mr. Pena also refers in support of claim 4 to evidence that

one of his brothers would provide his driver's license to help Mr. Pena and another

brother avoid detection.

The Colorado Court of Appeals rejected Mr. Pena's claim that admission of this evidence violated his due process right to a fair trial.  The state court applied plain error review and concluded there was no plain error because "[t]he testimony defendant has referred to was, in some measure, probative of an individual's bias and credibility and, in our view, was not unfairly prejudicial to defendant."  (ECF No. 15-14 at 28.)

It is apparent that the state court applied the correct governing principle set forth in *Dowling*, i.e., whether admission of the evidence at issue in claim 4 was unfairly prejudicial.  Furthermore, Mr. Pena does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case.  *See House*, 527 F.3d at 1018. Therefore, he fails to demonstrate that the state court's ruling with respect to claim 4 is contrary to *Dowling*.

Mr. Pena also fails to demonstrate the state court's rejection of claim 4 is an unreasonable application of the very general standard in *Dowling*.  Much of the evidence Mr. Pena challenges in claim 4 was probative of bias and credibility of various witnesses.  As a result, the evidence did not directly implicate Mr. Pena in the charged murder and did not render his trial fundamentally unfair.  In fact, some of the evidence Mr. Pena challenges in claim 4, such as the evidence that two witnesses had suffered from domestic abuse by either Mr. Pena's brother or uncle, actually undermined their credibility because it provided a possible motive for them to lie.  Although the testimony regarding the unexplained death of Mr. Pena's friend does not relate to bias or credibility, that testimony also did not render Mr. Pena's trial fundamentally unfair.  In short, based on my review of the entire state court record, I conclude that Mr. Pena fails

to demonstrate the evidence at issue in claim 4, whether considered individually or collectively, was "so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling*, 493 U.S. at 352.  Thus, Mr. Pena also is not entitled to relief with respect to claim 4.

## IV.  **CONCLUSION**

For the reasons discussed in this order, Mr. Pena is not entitled to relief on his remaining claims.  Accordingly,

IT IS ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated:  May 20, 2015

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge